The opinion of the Court was delivered by
Gibson J.
The sixth section of the act of assembly of 17'94, under which the question arises, exhibits an unusual want of precision, in the use of the words employed to designate the time when the several parts of the case provided for are supposed to happen. It begins by declaring, that “ if any person so dying seised, shall leave neither widow nor lawful issue, but shall leave a father, and brothers and sisters, the said real estate shall descend to, and be enjoyed by, the brothers and sisters of the said intestate (after the decease of the father,) as tenants in common in equal parts ; and if any of the brothers or sisters of the intestate, shall be then dead, leaving lawful issue, then it shall descend to, and be enjoyed *306 by the surviving brothers and sisters, and the lawful issue of such brothers and sisters as shall be then dead, leaving lawful issue, such issue always to inherit, if one person, solely, if several persons, as tenants in equal parts, such share only as would have descended to his, her, or their parent, had. such parent then been living.” So far the time referred to, as the point at which the respective interests are to be fixed, would seem to be, that of the death of the intestate’s father ; yet it will appear by the sequel, that no one of the adverbs of time relate to that event, except that which is employed to designate the time of enjoyment; in this case unnecessarily, and accidentally, spoken of, as ifit were connected with the time of descent; and that all those adverbs relate to the death of the intestate, at which the statute is supposed to speak. The section proceeds : — “ and each of the brothers and sisters of the person so dying intestate, who shall be living at the time of the death of the intestate, always to inherit and enjoy such share as would have descended and been distributed to him or her, if all the brothers or sisters leaving lawful issue, had been living at the time of the death of the intestate, but if the intestate shall leave no brother, or sister, nor their representatives, then the estate shall go to the father in fee simple, unless where the estate has descended from the part of the mother as aforesaid.” Now the only circumstance creating a doubt about the time when the inheritance descends, is the relation which, in point of grammatical construction, the adverbs of time, in the first part of the section, bear to the clause respecting the time of enjoyment; for strike out so much of it as, for the sake of designation, is contained in brackets, and those adverbs, then referring, as they were designed to do, to the death of the intestate, make every thing clear. By the preceding section of the act, it was provided, that “ in case any person so as aforesaid, seised or possessed, shall die leaving neither widow nor lawful issue, but leaving a father, the whole of the said real estate shall be enjoyed by the father of the intestate, for, and during the natural life of such father.” The sixth section, therefore, was necessary, only to declare, how it should be enjoyed after his death, and the descent to, and enjoyment by, the brothers and sisters, was. spoken of as to happen after the death of the father, only to mark the intention of the legislature, that the freehold estate, given *307 him by the preceding section, was to be continued to him, under the apparently altered state of things described in the sixth section, which, in addition to the father, speaks of brothers and sisters, as persons to be provided for; and these had not been mentioned before. The two sections were intended to provide for different branches of the same case, or state of the intestate’s kindred ; the fifth giving his father an estate for life, and the sixth, making provision-for brothers and sisters, to be enjoyed after his death. The clause relating to the descent and enjoyment after the father’s death was unnecessary ; but it was intended to render the enjoyment of the preceding life estate of the father consistent with the limitation of an immediate interest to the brothers and sisters, and not to fix the time when the estate should descend to them, but only the time when they were to enjoy it. But the conclusion of the section removes all doubt; for the brothers and sisters alive at the death of the intestate are to inherit at all events ; which would seldom happen, if the descent should be postponed till the death of the father. Again, the brothers and sisters alive at the death of the intestate are to inherit the same shares they would have been entitled to, If all the brothers and sisters leaving issue had been living at the death of the intestate, which plainly shews the whole estate is to descend at the death of the intestate; for the sum of each share is to be regulated by what the deceased brothers and sisters, who left issue, would have then inherited had they lived so long, and not by any consideration of the state of the family at the death of the father, when a whole branch may have become extinct. Although the framers of the act intended to establish a mode of descent differing, in most respects, from that of the common law, yet the descent of a part of the fee, while the rest is to be in abeyance, is so repugnant to our habits of thinking, and so destitute of aim or object, that I would, in a doubtful case, avoid such a construction, even if it were unattended by mischievous consequences. But if the descent of the inheritance were to await the expiration of the father’s life estate, the fee would be inalienable in the mean while: and although restraint on alienation for a limited period is not against good policy, and the peculiar circumstances of a testator’s family may induce him to impose it, it would, as a rule ap *308 plicable to every condition of a family, without regard to, circumstances, be intolerably inconvenient. If the father, and the brothers and sisters, or their issue, alive at the death °f the intestate, were to join in a conveyance, can there be a doubt that the whole fee would pass, so as to bar the issue of those who should die during the life estate of their father ? I am therefore of opinion, a share in the remainder in fee, descended to the wife of the witness, at the same instant that the life estate passed to her father.
Then we come to the argument, that as the husband’s release had divested all the interest which he himself had, there was neither a present, certain, or direct interest in the wife ; but only a possibility depending on her chance of surviving him, which, it is said, was insufficient to exclude him from being a witness. This point was fully decided, in Snyder’s lessee v. Snyder, (6 Binn. 483;) and although Judge Yeates dissented, I think his argument too inconclusive to shake the authority of the decision in the least degree. An interest which goes to competency, must,'without doubt be, present and certain; and where it is otherwise, as in the case of an heir or devisee living the ancestor, it goes only to credibility : but where it is vested, it is both present and certain, and the uncertainty of enjoyment, which seems to have been made the criterion by Judge Yeates is immaterial ; for if it were not, every person, in whom a remainder is vested, would be a witness to support the title to the particular estate, which is clearly not law. In Snyder’s lessee v. Snyder, the wife evidently had a vested interest, for she would, if she had survived her husband, have enjoyed, not an estate vesting in her, at the time of his death, but the remnant of one, which never was out of her, and which the husband could not convey. The present case is, however, stronger; for the wife has an interest in the fee, which, as it is of indefinite duration, must certainly, at some period, fall into the actual enjoyment of her or her heirs. Then as to her interest being direct there can be no question: for although she does not claim under the plaintiff, yet, claiming ' by the same title, she is privy to him in estate, and the verdict might be given in evidence for, or against, her, in a subsequent suit between her and the defendant. The witness then standing precisely as his wife would have stood, if she *309 had been offered as a witness withouut having executed a release, presented the ordinary case of a remainder man in-fee called to support the title of the tenant for life ; and, we are of opinion, he was properly rejected.
Judgment affirmed.